UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADHUBABU SANDARA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UR M. JADDOU, et al.,<br><br>Defendants. | Case No. 22-cv-04334-DMR<br><br>**ORDER GRANTING MOTION FOR STAY**<br><br>Re: Dkt. No. 20 |

Plaintiffs Madhubabu Sandara and Saraswathi Subramanyam filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 501, against Defendants Ur M. Jaddou, Director of the United States Citizenship and Immigration Services ("USCIS") and Antony Blinken, Secretary of the United States Department of State ("DOS"). Defendants now move to stay the action pending the Ninth Circuit's decision in *Babaria v. Blinken*, No. 22-16700 (9th Cir. filed Oct. 28, 2022). [Docket No. 20.] Plaintiffs oppose the motion. [Docket No. 21.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion to stay is granted.

**I.   BACKGROUND**

**A.   Factual Background and Procedural History**

Plaintiffs are citizens and nationals of India who reside in Newark, California. [Docket No. 19 (Am. Compl.) ¶¶ 1, 2.] In this action, Plaintiffs challenge the process by which USCIS and DOS allocate immigrant visas in connection with the adjudication of I-485 petitions.

In relevant part, Plaintiffs allege that USCIS requires that an immigrant visa be immediately available at the time of both filing *and* approval of an adjustment of status petition. *Id*. at ¶ 29. According to Plaintiffs, due to various factors, "it has become common place for a visa

number to be 'current' or 'immediately available' at the time of filing for an adjustment of status application, but not 'current' or 'immediately available' at the time of approval . . . ." *Id*. at ¶ 31. If a visa is not immediately available at the time of adjudication of the petition because "more people apply for a visa in a particular category than there are visas available for that month," USCIS will not issue a final decision on the petition, even if it is "otherwise approvable." *Id*. at ¶¶ 24-29, 37-39.

Plaintiffs further allege that DOS is responsible for "regulating visa issuance, enforcing the statutory numerical limits on immigrant visas, and identifying when an immigrant visa [is] 'immediately available'" for the purpose of adjustment of status. DOS "created a system by which it would identify a 'current date' each quarter, and any visa petitions that had been filed prior to that current date would be considered 'immediately available' under the adjustment of status statute." This system remains in place. *Id*. at ¶¶ 16-18. Plaintiffs allege that "DOS will not approve a visa request for an otherwise approvable adjustment of status applicant if their priority date is after the 'current' date in a visa bulletin at the time of the adjustment of status approval." *Id*. at ¶ 41. The "priority date" is the filing date of a labor certification for a non-citizen. *See id*. at ¶¶ 78-80.

Plaintiffs also describe "visa retrogression," which is the "backwards" movement of the "current date" in a visa bulletin:

> Sometimes [an immigrant visa number] that is current one month will not be current the next month, or the cut-off date will move backwards to an earlier date. This is called visa retrogression, which occurs when more people apply for a visa in a particular category than there are visas available for that month . . .

*Id*. at ¶ 38.

According to Plaintiffs, the consequence of USCIS's and DOS's policies with respect to visa issuance, retrogression, and adjudication of petitions for adjustment of status is that if an "adjustment of status applicant *files* when their visa number is current but during the application's pendency the visa bulletin retrogresses and their visa number is no longer current at *approval*, USCIS and DOS both refuse to issue a final decision on that adjustment of status application. They apply an Adjudication Hold." *Id*. at ¶ 42 (emphasis in original). Plaintiffs describe these

two agency policies as the unlawful "Adjudications Hold Policies." *See id*. at 8, ¶¶ 3, 4, 37-39. They further allege that the Adjudications Hold Policies are contrary to Congressional intent and violate the APA. *Id*. at 1-2; ¶¶ 123-24, 132-33.

In November 2020, Plaintiffs filed I-485 petitions for adjustment to lawful permanent resident status by obtaining visas in the EB-2 preference category, which remain pending. *Id*. at ¶¶ 76-97. They allege that their priority date is October 23, 2014, that their petitions are "adjudication ready," and that "there are currently immigration visas available for them," *Id*. at ¶¶ 80, 93, 96, but that DOS recently moved the "current date" for visa approval to April 2012, which pre-dates their priority date. *Id*. at ¶ 106. As a result, there are currently no visas immediately available to Plaintiffs and their I-485 petitions are subject to the Adjudications Hold policies. *Id*. at ¶¶ 107-109, 112, 113.

Plaintiffs allege three claims for relief in the operative amended complaint. First, they allege that USCIS has unlawfully refused to finally adjudicate their I-485 petitions "based on an *ultra vires*, unlawful, or illegal policy, requiring an immigrant visa to be current or immediately available at the time of approval of the" petition in violation of the APA. *Id*. at ¶ 123. Second, they allege that "DOS is unlawfully refusing to issue visa numbers to Plaintiffs upon USCIS's approval of Plaintiffs' Forms I-485 based on an *ultra vires*, unlawful, or illegal policy, requiring an immigrant visa to be current or immediately available at the time of approval of the application" in violation of the APA. *Id*. at ¶ 132. Third, Plaintiffs allege that USCIS has unreasonably delayed deciding their I-485 petitions in violation of the APA. *Id*. at ¶¶ 137-215. They ask the court to declare the Adjudications Hold policies unlawful, enjoin USCIS and DOS from applying their policies to Plaintiffs, and compel USCIS to decide Plaintiffs' I-485 petitions within 30 days. *Id*. at ¶¶ 217-222.

Plaintiffs filed the complaint on July 27, 2022. On August 19, 2022, Plaintiffs filed a motion for preliminary injunction. They subsequently withdrew the motion and the court denied it as moot. [Docket Nos. 9, 11, 12.] On October 25, 2022, the parties filed a joint status report and stipulated schedule for the filing of an amended complaint and Defendants' response thereto, which the court granted. [Docket No. 17, 18.] Plaintiffs timely filed the amended complaint on

October 28, 2022, and Defendants filed the instant motion to stay on December 1, 2022.

### B.     Defendants' Motion to Stay

Defendants move to stay this action pending the Ninth Circuit's resolution of *Babaria v. Blinken*, No. 22-16700 (9th Cir. filed Oct. 28, 2022). The plaintiffs in *Babaria*, who are represented by the same counsel as Plaintiffs in this action, are Indian nationals living in the United States who have submitted Forms I-485 for adjustment of status with priority dates between June 2012 and November 2014. Each plaintiff had a visa number available at the time of their applications but no longer had one available at the time of adjudication. *Babaria v. Blinken*, No. 22-CV-05521-SI, 2022 WL 10719061, at *1, 3 (N.D. Cal. Oct. 18, 2022). The *Babaria* plaintiffs filed a complaint and motion for a temporary restraining order in late September 2022. *Id.* at *4. They argued that visa retrogression by DOS, the backwards movement of "final action" or "current" dates in a visa bulletin, is an "ultra vires policy." The *Babaria* plaintiffs also argued that previous amendments to the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, prevent USCIS "from considering visa availability at the time of adjudication," instead of at the time of filing only. *Id*. at *2, 4. They sought a temporary restraining order/preliminary injunction requiring USCIS and DOS to "continue adjudicating plaintiffs' applications for adjustment of status and allocating visa numbers for them" and argued that they would be irreparably harmed in the absence of such an order. *Id*. at *4.

The district court denied the motion for a preliminary injunction on October 18, 2022. It held that the plaintiffs had "little to no likelihood of success on the merits" on their claims. *Id*. at *5. Specifically, the court held that "[t]there is no ambiguity" in the relevant statute, 8 U.S.C. § 1255(a), which grants the Attorney General discretionary authority to adjust the status of eligible noncitizens, that "require[ed] the Court to look further to determine whether Congress intended to prohibit the Attorney General from considering criteria beyond those set by Congress. Nor does the legislative history indicate that Congress meant something other than what it said." *Id*. at *5. The court also held that the plaintiffs' interpretation of section 1255(a) "would lead to a mismatch between the number of visas available and the number issued, because a visa's availability would be committed at the time of application but reduced only at the time of approval," which the court

concluded was as "an absurd result." *Id*. The court also held that the plaintiffs had not shown "extreme harm" that would justify a mandatory injunction, since "[a]bsent injunctive relief, plaintiffs will remain eligible for adjustment of status for the pendency of their applications." *Id*. at *6 (quotation marks and citation omitted). It also held that the public interest favored the government. *Id*.

The *Babaria* plaintiffs filed a notice of appeal to the Ninth Circuit on October 28, 2022. The Ninth Circuit consolidated the appeal with two other cases, *Singh v. Jaddou*, No. 22-35702 (9th Cir. filed Sept. 2, 2022), and *Datta v. Jaddou*, No. 22-35773 (9th Cir. filed Sept. 30, 2022). The opening and answering briefs have been filed and the Ninth Circuit has scheduled a hearing on the consolidated appeals for March 29, 2023. *See Babaria v. Blinken*, No. 22-16700, Dkt. No. 15 (Dec. 21, 2022).

In their opening brief, the *Babaria* plaintiffs argued that the district court erred by finding that they had not shown a likelihood of success on the merits of their claims that USCIS and DOS's "Adjudication Hold Policies" violate "clear Congressional intent" and "have no support in the plain language of" section 1255(a) because the statute "does not require an immigrant visa to be immediately available at the time of adjudication." *Babaria v. Blinken*, No. 22-16700, Dkt. No. 10, Appellants Opening Brief at 4-7. They also argued that the Adjudication Hold Policies are "irreparably harming" them because the policies "deprive them of their right to receive a final decision on their pending adjustment of status petitions," that they "face an indeterminate delay on the adjudication of their adjustment of status applications while they wait for their date to be current again," and that "the indeterminate delay of their case prevents them from" several benefits of lawful permanent residency. *Id*. at 20-22.

## II.   LEGAL STANDARD

Pursuant to the court's power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), a court may "enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial,

administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id*. at 863-64. In deciding whether to issue a *Landis* stay, courts consider three factors: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Whether to enter a stay pursuant to a court's inherent powers is a matter entrusted to the court's discretion. *See Landis*, 299 U.S. at 254 ("[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

"In cases where substantial litigation is likely to take place during the pendency of an appeal, courts have at times granted a stay as a means of conserving judicial resources." *Gustavson v. Mars, Inc.*, No. 13-CV-04537-LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (citing *Canal Properties LLC v. Alliant Tax Credit V, Inc.*, No. C04-03201 SI, 2005 WL 1562807, at *3 (N.D. Cal. June 29, 2005)).

## III. DISCUSSION

Defendants argue that a stay is warranted pending a decision by the Ninth Circuit in *Babaria* because it involves "the same legal issues that will control the outcome of the instant matter." Mot. 1. Plaintiffs do not dispute that *Babaria* presents the same legal issues but argue that the *Landis* factors weigh against granting a stay.

### A. Factors 1 and 2, Hardship to the Parties

Plaintiffs argue that they "continue to suffer harm," presumably as a result of the delay in adjudicating their I-485 petitions, and that delay in the determination of "Defendants' impending motion to dismiss and Plaintiffs' impending partial motion for summary judgment prevents them from" enjoying several benefits of lawful permanent residency." Opp'n 3. Plaintiffs then list the benefits of that status, including being able to acquire time towards naturalization, travel internationally without seeking admission upon re-entry to the United States, apply for immigration status for certain family members, and change employers or work for themselves

without seeking USCIS's authorization, among other things. *Id*. According to Plaintiffs, "[t]he 'law's delay' will cause untold degrees and kinds of irreparable harm." *Id*. (citation omitted). In other words, Plaintiffs' position is that a stay of this case will delay their adjustment to lawful permanent resident status. Notably, a stay of this litigation will have no impact on USCIS's processing of their pending I-485 petitions and will not affect their existing priority dates. Nor will a stay impact their current lawful status, which enables them to work in the United States and travel abroad. *See* Am. Compl. ¶¶ 76, 94. Moreover, Plaintiffs' articulation of the harm that will result from a stay is entirely generalized and unspecific; Plaintiffs did not submit evidence regarding the actual, particular harms they face if this case is stayed pending the Ninth Circuit's decision in *Babaria*. *See Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 938 (N.D. Cal. 2015) (noting that "[c]ourts . . . are generally unwilling to presume delay is harmful without specific supporting evidence.").

Moreover, Plaintiffs' argument appears to rest on the assumption that they will ultimately prevail on their claims for relief and that a stay would delay that inevitable conclusion.[1] Plaintiffs' likelihood of success on the merits of their claims is far from clear, based on the rulings in similar district court cases. For example, the district court in *Babaria* found that the plaintiffs in that case had "little to no likelihood of success on the merits" on their claim that USCIS may not consider visa availability at the time it adjudicates a petition to adjust status. Additionally, the appeal in *Babaria* was consolidated with two other pending appeals, *Singh v. Jaddou*, No. 22-35702 (9th Cir. filed Sept. 2, 2022), and *Datta v. Jaddou*, No. 22-35773 (9th Cir. filed Sept. 30, 2022), involving claims similar to those at issue in this case in which neither set of plaintiffs prevailed on their motions for temporary restraining orders. Similarly, in *Singh*, the court denied a motion for a temporary restraining order brought by two plaintiffs who filed I-485 petitions to adjust status. *Singh v. Jaddou*, No. 2:22-CV-01180-RAJ, 2022 WL 4094373, at *1 (W.D. Wash. Sept. 2, 2022). At the time the plaintiffs filed suit, their I-485 petitions had been pending for approximately 20 months. *Id*. They filed a motion for a temporary restraining order in which they asked the court to

---

[1] Plaintiffs' position also presumes that USCIS will grant their I-485 petitions if visas become immediately available, which is speculative.

order USCIS to "adjudicate their petitions by September 30, 2022 or before USCIS runs out of visas"; approve the I-485 petitions; enjoin USCIS's "Regression Policy" pursuant to which "applications to adjust status become backlogged"; or "reserve" immigrant visas for issuance to plaintiffs at the conclusion of their case if they prevailed. *Id*. The court denied the motion, finding that the plaintiffs had not shown a likelihood of success on their claim that USCIS had unreasonably delayed the adjudication of the I-485 petitions. *Id*. at *3-4. In *Datta v. Jaddou*, No. 2:22-CV-1302-JHC, 2022 WL 4547018, at *1 (W.D. Wash. Sept. 29, 2022), the plaintiffs are approximately 200 families lawfully living and working in the United States who filed I-485 petitions to adjust status with priority dates ranging from April 2012 to December 2014. They filed suit asking the court to declare USCIS and DOS's retrogression policies unlawful and enjoin the agencies from applying them, and to order USCIS to issue final decisions on their pending petitions to adjust status within six months and DOS to issue available visa numbers upon approval of the petitions. *Id*. After DOS announced that it was moving the current date in its visa bulletin backward effective October 1, 2022, thus delaying adjudication of the plaintiffs' petitions, the *Datta* plaintiffs moved for a temporary restraining order to enjoin Defendants from "applying their retrogression policies on October 1, 2022" to ensure that the plaintiffs would remain eligible for adjustment of status when immigrant visas became available. *Id*. The court denied the motion on the ground that the plaintiffs had "not shown that the facts and law *clearly* favor their position such that issuance of a TRO would be appropriate." *Id*. at *2 (emphasis in original). The court found that "[q]uestions remain regarding whether there is a statutory or regulatory 'specific, unequivocal command' to take discrete agency action that is judicially enforceable under the APA, whether the agencies' retrogression policies represent a lawful exercise of the discretion granted them by Congress, and whether adhering to Plaintiffs' position would force the agencies to violate other statutory provisions." *Id*.

Finally, Plaintiffs' argument that they will generally be harmed by the delay in resolving their claims is not particularly persuasive given the status of the consolidated appeals, which is moving forward on a fairly expedited schedule. Briefing is nearly complete and oral argument has been scheduled in March 2023, just two months from now. Plaintiffs may ultimately benefit from

8

waiting until the Ninth Circuit resolves the *Babaria* appeal, since a decision in the *Babaria* plaintiffs' favor could be dispositive of Plaintiffs' claims in this case.

As to the hardship to Defendants if the court does not enter a stay, Defendants argue that they will be harmed if they are required to proceed with this litigation, including likely motions practice, while litigating identical issues before the Ninth Circuit. Mot. 7. Defendants do not articulate any actual hardship, separate from having to defend this lawsuit if the court denies the stay. *See Aliphcom*, 154 F. Supp. 3d at 938 (finding hardship to moving party if stay denied was neutral where the only hardship established was moving forward with the litigation, citing *FormFactor, Inc. v. Micronics Japan Co.*, No. CV-06-07159 JSW, 2008 WL 361128, at *2 (N.D. Cal. Feb. 11, 2008) ("The hardship related to defending a lawsuit is irrelevant when considering whether to grant a stay.")).

In sum, the court concludes that the hardship to either side from granting or denying a stay is a neutral factor.

### B.    Factor 3, the "Orderly Course of Justice"

Defendants argue that a stay will simplify the legal issues, promote the orderly course of justice, and conserve judicial resources. The court agrees. The *Babaria* appeal involves claims, legal issues, and legal theories that are identical to those raised by Plaintiffs in this case. The *Babaria* appeal is likely to provide substantial guidance that will impact the court's decisions in this case and may resolve Plaintiffs' claims altogether. At the least, it will likely narrow the issues before this court. Plaintiffs have indicated their intent to move for partial summary judgment. *See* Opp'n 3. Judicial economy will best be served if the court does not expend resources on deciding that motion before the Ninth Circuit likely rules on identical issues in *Babaria*. Additionally, a stay will minimize the risk of inconsistent rulings. In sum, the *Babaria* appeal "is likely to substantially advance the resolution of the parties'" dispute, *see Aliphcom*, 154 F. Supp. 3d at 939, and conserve scarce judicial resources.

Considering all three *Landis* factors, the court concludes that "a stay would be the most efficient and fairest course . . . [as] there are independent proceedings which bear upon the case," *Gustavson*, 2014 WL 6986421, at *3 (cleaned up), and would promote "the orderly course of

9

1   justice." *See CMAX*, 300 F.2d at 268.

2   **IV.   CONCLUSION**

3   For the foregoing reasons, Defendants' motion to stay is granted. For docketing reasons, the court will administratively close this case. Any party may reopen this case by filing a notice within 14 days after the Ninth Circuit issues its mandate in the *Babaria* consolidated appeal.

**IT IS SO ORDERED.**

Dated: January 10, 2023



Donna M. Ryu
United States Magistrate Judge